IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Portland Division

| | | |
|---|---|---|
| AMY E. FLETCHER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 6:15-cv-01315-JO |
| v. | ) | |
| | ) | |
| CAROLYN W. COLVIN, Acting Commissioner of | ) | OPINION AND ORDER |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

JONES, Judge,

Plaintiff Amy Fletcher appeals the final decision of the Commissioner denying her concurrent applications for disability insurance benefits under Title II of the Social Security Act and for supplemental security income under Title XVI of the Act. This court has jurisdiction under 42 U.S.C. § 405(g). For the following reasons, the Commissioner's decision is **AFFIRMED** and this matter is dismissed.

## PRIOR PROCEEDINGS

Fletcher alleged her disability began on October 16, 2006. Admin. R. 988, 1189. She satisfied the insured status requirements of the Social Security Act through March 31, 2008. Admin. R. 964. She must prove she was disabled on or before that date to prevail on her Title II claim. 42 U.S.C. § 423(a)(1)(A). *See Tidwell v. Apfel,* 161 F.3d 599, 601 (9th Cir. 1998).

-1-    OPINION AND ORDER

Fletcher filed her applications in June 2009, alleging disability due to "bipolar disorder, posttraumatic stress disorder, social anxiety, back spasms, osteoarthritis, gallstones, ribs, liver." Admin. R. 173. An administrative law judge ("ALJ") developed the record, held an administrative hearing, and determined that Fletcher was not disabled within the meaning of the Social Security Act. Admin. R. 11-33. After Fletcher appealed to the district court, the parties stipulated to a remand for further proceedings. Admin. R. 1047-1048. In proceedings after the remand, a different ALJ considered the prior record, developed the record further, held a second administrative hearing, and determined that Fletcher was not disabled within the meaning of the Act. Admin. R. 964-979. Fletcher's appeal of that order is now before the court.

## THE ALJ'S FINDINGS

The ALJ applied the sequential disability determination process set forth in the regulations and described in *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). The ALJ found Fletcher's ability to perform basic work activities adversely affected by a history of left carpal tunnel and cubital tunnel release, obesity, fibromyalgia, degenerative disc disease of the lumbar region of the spine, bilateral chondromalacia patella syndrome, bipolar disorder and post traumatic stress disorder ("PTSD"). Admin. R. 966. The ALJ found that Fletcher's impairments were not equivalent to any of the presumptively disabling conditions in the regulatory Listing of Impairments at 20 C.F.R. Part 404, Subpart P, Appendix 1. Admin. R. 967.

The ALJ determined that, despite her impairments, Fletcher retained the residual functional capacity ("RFC") to perform a range of light work with limited standing, walking, sitting, and postural activities such as stooping, crouching and kneeling. The ALJ precluded work requiring her to crawl or to climb ladders, ropes or scaffolds. The ALJ found no limitation in Fletcher's use of

-2-    OPINION AND ORDER

her left hand, but found her ability to handle and finger with her right hand somewhat limited.  The ALJ found Fletcher needed work in an environment in which she was not exposed to hazards and could avoid concentrated exposure to airborne irritants.  The ALJ found that, despite her mental impairments, Fletcher retained the ability to work with simple instructions in a setting without public contact and only occasional contact with coworkers and supervisors.  Admin. R. 968-969.

The vocational expert ("VE") testified that a person having Fletcher's RFC and vocational factors of age, education, and work experience, could perform light, unskilled occupations such as back office helper, routing clerk, and shipping and receiving weigher, which in combination represent over one hundred fifty thousand jobs in the national economy.  Admin. R. 978, 1009.  As a result, the ALJ concluded that Fletcher had failed to establish that she was disabled within the meaning of the Social Security Act.  Admin. R. 979.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence.  *See* 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).  "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r Soc. Sec. Admin.,* 554 F.3d 1219, 1222 (9th Cir. 2009)(quoting *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995)).  It is relevant evidence that a reasonable person might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Under this standard, the court must consider the record as a whole, and uphold the Commissioner's factual findings that are supported by inferences reasonably drawn from the evidence, even if another interpretation is also rational.  *Robbins v. Soc.*

*Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006); *Batson,* 359 F.3d at 1193; *Andrews v. Shalala*, 53 F.3d 1035, 1039-40.

## ASSIGNMENTS OF ERROR

The claimant bears the burden of showing that the ALJ erred and that any error was harmful. *McLeod v. Astrue*, 640 F.3d 881, 886-87 (9th Cir. 2011). Fletcher contends the ALJ erred by improperly discounting the credibility of her subjective statements and improperly weighing the opinions of three psychologists and a counselor. Fletcher contends these errors led the ALJ to erroneously conclude that her impairments were not equivalent to one of the presumptively disabling conditions in the regulatory Listing of Impairments and to assess her RFC in a manner that did not accurately reflect all of her functional limitations.

## DISCUSSION

### I.   Credibility Determination

In her written application, Fletcher asserted she could not sit or stand for very long, had difficulty lifting, bending, and stooping, and did not like working with many people. Admin. R. 173. She said she could no longer bend, lift, carry, sit for more than an hour at a time, or be around people. Admin. R. 192. Fletcher said she would become frustrated and angry easily when getting along with others. She did not like to do things in public and experienced panic attacks "when lots of people are around." Admin. R. 196. Fletcher estimated that she could lift eight to ten pounds, stand for 30 minutes, walk for 45 minutes, and sit for one hour. She said she could walk one half to three quarters of a mile and then would need to rest for 20 to 60 minutes. Admin. R. 196. Fletcher also said she required at least one 3-hour nap each day. Admin. R. 199.

At her first administrative hearing in April 2011, Fletcher said she thought bipolar disorder was her greatest barrier to employment. Admin. R. 47-48. She reported that she was compliant with her bipolar medications and was seeing a counselor regularly. Admin. R. 48, 53. She said her back and knees were "going bad" and kept her from working, and that her body was "falling apart." Admin. R. 48-49. Fletcher estimated she could walk for about 45 minutes with a cane. Admin. R. 54.

In August 2014, Fletcher testified at her second administrative hearing that her anxiety had increased recently, she had undergone surgery to address carpal tunnel syndrom and ulnar neuropathy in the right arm, and that she would not be able to return to an office job because: "My body not being able to do what it's supposed to do, not being able to type or hold on to things." Admin. R. 1000, 1002, 1006.

The ALJ believed Fletcher had medically determinable impairments that could cause some degree of the limitations she claimed, as reflected in the significant restrictions in the RFC assessment limiting Fletcher to light work with limited lifting, standing, walking, sitting, postural activities, use of the right hand, social interactions, and so forth. Admin. R. 968-969, 970. The ALJ discounted Fletcher's subjective statements about the intensity, persistence, and limiting effects of her symptoms, however, to the extent she claimed she could not work even within the restrictions of the RFC assessment. Admin. R. 970.

An adverse credibility determination must include specific findings supported by substantial evidence and a clear and convincing explanation. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996). The findings must be sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily

discredit the claimant's testimony. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). In assessing credibility, an ALJ must consider all the evidence in the case record, including the objective medical evidence, the claimant's treatment history, medical opinions, daily activities, work history, the observations of third parties with knowledge of the claimant's functional limitations, and any other evidence that bears on the consistency and veracity of the claimant's statements. *Tommasetti*, 533 F.3d at 1039; *Smolen*, 80 F.3d at 1284.

The ALJ's written decision reflects that she considered all the evidence pertaining to the proper factors for assessing Fletcher's credibility. The ALJ observed that the objective medical evidence did not fully support many of Fletcher's allegations about the limiting effects of her impairments. For example, contrary to Fletcher's allegations that she could not type or hold on to things, the objective and clinical findings relating to carpal tunnel syndrome and ulnar neuropathy ranged from insignificant to mild from the alleged onset of disability until 2013. In March 2007, electromyography showed mild ulnar neuropathy across the right elbow but no signs of carpal tunnel syndrome or cervical radiculopathy that would explain her alleged symptoms. Admin. R. 541. In October 2008, a nerve conduction and electromyography study was normal. Admin. R. 606. At a consultative physical examination in February 2011, Fletcher's ability to grasp was completely intact, she was able to grip and hold objects securely and grasp and manipulate small and large objects. Admin. R. 935. In July 2013, Fletcher complained of increased severity, including the loss of the ability to grasp and to feel with her fingertips. Admin. R. 1195. When objective medical evidence supported severe ulnar neuropathy and moderate carpal tunnel syndrome on the right, Fletcher underwent surgery for cubital tunnel decompression and carpal tunnel release. Admin. R. 1292, 1298. During recovery, she was able to use the right hand, although she had surgical pain with

twisting and pouring. Admin. R. 1288. There are no objective or clinical findings to suggest impairment in Fletcher's left hand or arm. Admin. R. 1006. This medical evidence reasonably supports the ALJ's inference that Fletcher overstated the duration and degree of limitation in the use of her hands.

Similarly, contrary to her allegation that she could not stand or walk very long due to back pain, Fletcher rarely mentioned back problems to her physicians from the onset of disability until 2009. In March 2007, a physical examination of her back was unremarkable and diagnostic imaging showed only mild degenerative changes. Admin. R. 599, 629. During 2009, Fletcher had an increase in symptoms and diagnostic imaging showed a disc protrusion at L4-5. Admin. R. 624, 731. Fletcher underwent lumbar surgery without complications followed by a course of physical therapy, after which she reportedly was able to return to relatively normal activities of daily living. Admin. R. 737, 745. In November 2010, Fletcher had a patch of diminished sensation on the right foot and walked with a slow gait as if in pain, but retained almost full strength with mild weakness associated with subjective guarding in the right lower extremity. Admin. R. 786. In February 2011, Fletcher had tenderness to palpation on her back examination, but exhibited normal gait and muscle strength, bulk and tone in the lower extremities. Admin. R. 934-935. The ALJ noted that Fletcher had an increase in symptoms during an extended period of noncompliance with treatment in 2012. Admin. R. 972. Fletcher reported a new onset of right leg weakness in 2013, which improved remarkably with physical therapy and exercise. Admin. R. 972, 1212.

Contrary to Fletcher's allegation that she could lift only eight to ten pounds, the clinical findings consistently showed that she retained normal upper extremity motor strength, muscle bulk,

and muscle tone, without atrophy that would suggest inactivity or disuse. Admin. R. 786, 935-936, 1203-1204, 1297, 1565.

Fletcher's allegations regarding limitations from mental impairments, such as difficulty focusing, were not reflected in objective or clinical findings. The ALJ found that neuropsychological testing did not identify limitations in excess of those in the RFC assessment. Admin. R. 973. In February 2011, David Northway, Ph.D., administered testing that suggested mild impairment in mental efficiency, average intellectual function, and average memory function, with a relative weakness in visual working memory. Dr. Northway said these scores did not strongly suggest memory deficits or significant difficulties learning and remembering new material. Admin. R. 925. In May 2011, Leia Hughey, Ph.D., administered a different set of tests and obtained scores indicating low average cognitive functioning, low average immediate memory, average delayed memory, and borderline attention. Dr. Hughey said these scores were generally consistent with Dr. Northway's findings. Admin. R. 953.

The ALJ reasonably drew an adverse inference as to Fletcher's credibility from the inconsistencies between Fletcher's alleged limitations and the objective and clinical medical evidence. *See Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 600 (9th Cir. 1999) ( Conflicts between the claimant's subjective complaints and the objective medical evidence can undermine the claimant's credibility and provide a basis for ALJ's adverse credibility finding).

The ALJ also found Fletcher's allegations of debilitating limitations inconsistent with her reported activities. Admin. R. 970-77. Inconsistencies between a claimant's conduct and the limitations she alleges may undermine the claimant's credibility. *Light v. Soc. Sec. Admin.,* 119 F.3d 789, 792 (9th Cir. 1997).

The ALJ noted that at the alleged onset of disability and throughout the relevant period for her claim, Fletcher was a single parent raising two children. She cooked meals, prepared the children for school, bathed them, laundered their clothes, and walked the younger child to and from school. She performed typical household chores, such as sweeping, vacuuming, laundry, watering plants, shopping, and caring for a pet. Admin. R. 970, 192-195.

For at least four months in 2011 Fletcher provided babysitting for young children in exchange for a room at her friend's house. Admin. R. 1510, 1524, 1527. The ALJ noted that in August 2012 Fletcher reported helping care for a new grandchild. Admin. R. 970, 1230. Between January 2012 and May 2014, Fletcher cared for her sister who had sustained a head injury, helping with medications, caring for the sister's child, doing household chores such as cooking and cleaning and running errands. Admin. R. 970, 1334, 1309, 1329, 1355, 1397, 1412, 1498. In 2014, Fletcher reported that she was also a foster parent. Admin. R. 970, 1337-38. The ALJ reasonably inferred from the broad range of activities Fletcher performed while providing care to her children and her sister and her sister's dependents that she was capable of greater mental and physical functioning than she alleged. Admin. R. 970.

The ALJ cited other activities that cast doubt on the extent of Fletcher's mental and physical limitations. Despite Fletcher's purported inability to focus or concentrate, she was able to attend school between June 2007 and June 2008, which she reported was "going well" and she was "proud of [her] grades." Admin. R. 970, 480, 695, 699. Despite allegations of the inability to use her hands, Fletcher testified she spent two to three hours a day with computer games and social media, and sewed costumes. Admin. R. 970, 924, 1195, 1309. Fletcher reportedly enjoyed training horses and looked for a job from November 2008 through May 2009. Admin. R. 645, 649, 655, 659, 654.

Furthermore, the ALJ noted that despite allegations of social anxiety and difficulty being around others, Fletcher regularly participated in group events with at least 50 people in the Society for Creative Anachronisms. Admin. R. 881, 902, 970, 1080-82, 1378, 1388, 1443, 1524.

The ALJ's findings are supported by substantial evidence in the record and are sufficiently specific to satisfy me that the ALJ did not arbitrarily reject Fletcher's subjective statements. The ALJ's reasoning is clear and convincing and rests on rational inferences drawn from the record. Accordingly, the ALJ's credibility determination was not erroneous. *Tommasetti*, 533 F.3d at 1039; *Carmickle*, 533 F.3d at 1160.

## II.    Opinion Evidence

Fletcher contends the ALJ improperly weighed the opinions of three psychologists and a counselor. As described previously, Dr. Northway performed a neuropsychological screening assessment in February 2011. Admin. R. 921-30. Dr. Northway reviewed medical records and counseling notes, conducted a clinical interview, and administered the standardized tests described previously. He diagnosed PTSD and Bipolar Disorder and gave Fletcher a global assessment of functioning score indicating moderate difficulties. Admin. R. 926. Dr. Northway also provided a worksheet on which he rated Fletcher's degree of limitation in several work-related activities. He found no limitation in her ability to work with simple instructions and moderate limitation in her ability to carry out complex instructions and to make judgments on complex work-related decisions. Admin. R. 928. Dr. Northway found Fletcher's ability to interact appropriately with the public, coworkers, and supervisors moderately impaired. He found marked impairment in her ability to respond appropriately to usual work situations and to changes in a routine work setting. Dr.

Northway relied on Fletcher's presentation during the interview and the symptoms she reported to support his opinion. Admin. R. 929.

The ALJ gave great weight to Dr. Northway's opinion regarding Fletcher's cognitive functioning because it was consistent with the standardized testing he administered. Admin. R. 974. Indeed, the ALJ's RFC assessment acknowledged that Fletcher was limited to work involving simple instructions, consistent with Dr. Northway's opinion. Admin. R. 969. The ALJ also accepted Dr. Northway's opinion that Fletcher had moderate limitations getting along with the public, coworkers, and supervisors, and the RFC assessment includes limitations on such interactions. Admin. R.969, 974-975. The ALJ also accepted Dr. Northway's global assessment of functioning score, finding it consistent with the record as a whole. Admin. R. 975.

The ALJ did not accept Dr. Northway's opinion that Fletcher had marked limitation in the ability to respond appropriately to usual social situations at work and to changes in routine. Admin. R. 974-975. An ALJ may discount the opinion of an examining physician by giving a clear and convincing explanation supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211,1216 (9th Cir. 2005); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996). The ALJ reasonably inferred from the absence of clinical findings to support this part of the opinion, that Dr. Northway relied on Fletcher's subjective complaints. Admin. R. 975. An ALJ may properly reject a physician's opinion that is conclusory and inadequately supported by clinical or objective findings. *Meanal v. Apfel*, 172 F.3d 1111, 1117 (9th Cir. 1999). Similarly, an ALJ is entitled to reject an examining physician's opinion that is premised primarily on subjective complaints that the ALJ properly found unreliable. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). In addition, the ALJ found that Fletcher's reported social

activities throughout the relevant period showed that she functioned better than Dr. Northway said she did. Admin. R. 974-975.

The ALJ's explanation for the weight she gave Dr. Northway's opinion is clear and convincing and based on rational inferences drawn from substantial evidence in the record. Accordingly, the ALJ's determination to give diminished weight to one part of Dr. Northway's opinion must be upheld. *Batson,* 359 F.3d at 1193.

Leia Hughey, Ph.D., examined Fletcher in May 2011 at her counsel's request. Admin. R. 949. Dr. Hughey reviewed Dr. Northway's report and administered a different battery of standardized tests. These measured Fletcher's cognitive functioning in the low average range, memory functioning in the low average to average range, and attention in the borderline range. Admin. R. 953, 973. The ALJ found these results consistent with the record as a whole and with the limitations in the RFC assessment. Admin. R. 973.

Dr. Hughey completed a worksheet similar to the Social Security Administration Mental Residual Functional Capacity form, except that it used different definitions for measuring the degree of limitation in various categories of work related activities. Admin. R. 955. Dr. Hughey indicated that Fletcher had no limitations in working with simple instructions, sustaining an ordinary routine, making simple work-related decisions, and asking for assistance. She found Fletcher had moderate limitations working with detailed instructions, working with and around others, getting along with coworkers, and interacting with the public. Dr. Hughey opined that Fletcher had marked limitations in maintaining attention, keeping regular attendance, completing a normal work schedule, and responding to changes in the work setting. Admin. R. 955-956. As with Dr. Northway's opinion,

the ALJ found most of Dr. Hughey's opinion consistent with the record as a whole, but gave little weight to her findings of marked impairment. Admin. R. 975.

The ALJ's explanation for her evaluation of Dr. Northway's opinion applies equally to her evaluation of Dr. Hughey's similar opinion. Dr. Hughey's examination did not include clinical observations or objective findings regarding the ability to maintain attendance, conform to a work schedule, or respond to changes in routine. The ALJ found Dr. Hughey's opinion regarding marked impairments in these activities inconsistent with the record as a whole, including Fletcher's level of activity during the relevant time and her contemporaneous reports during the course of her treatment. Admin. R. 975. I am satisfied that the ALJ adequately explained her evaluation of Dr. Hughey's opinion.

Miller Garrison, Ph.D., did not examine Fletcher, but reviewed her medical records and completed a questionnaire regarding her ability to perform work-related activities. Dr. Garrison opined that Fletcher had mild limitations in working with simple instructions but marked limitations in the ability to interact with coworkers and supervisors in usual work situations and to respond appropriately to changes in routine. Admin. R. 1567-1568. The ALJ found Dr. Garrison's opinion unpersuasive because he did not provide a narrative explanation of the basis for his findings, giving only conclusory check-mark responses. Admin. R. 975-976. An ALJ need not accept an opinion that is conclusory and not supported by clinical or objective findings. *Thomas v. Barnhart*, 278 F.3d at 957; *Meanal v. Apfel*, 172 F.3d at 1117.

Sandi O'Brien, M.A., saw Fletcher in regular counseling sessions for managing stress and anxiety beginning in November 2006. Admin. R. 843-844. Ms. O'Brien said Fletcher had difficulty dealing with stress and experienced mood swings including irritability. Ms. O'Brien thought

Fletcher "would have a hard time being around too many people," and would not be able to be present for a regular full time work schedule. Admin. R. 845. Ms. O'Brien completed a worksheet, checking boxes to indicate that Fletcher had marked impairment in maintaining attention and concentration, working around others, completing a normal work schedule, and interacting with the public. Admin. R. 847.

The ALJ found Ms. O'Brien's comments and ratings unpersuasive and gave her opinion little weight. Admin. R. 976. An ALJ must consider the opinions of sources such as Ms. O'Brien, but may discount them by providing reasons that are germane and supported by substantial evidence. 20 C.F.R. § 404.1513(d); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir.2001); *Gomez v. Chater*, 74 F.3d 967, 970–71 (9th Cir.1996). As with the previous opinions, the ALJ discounted Ms. O'Brien's opinion regarding marked social limitations as inconsistent with Fletcher's regular social activities described above. The ALJ noted that, like Drs. Northway and Hughey, Ms. O'Brien, relied extensively if not exclusively on Fletcher' s subjective complaints, which the ALJ found less than fully credible. Admin. R. 976.

The ALJ noted that the opinions that Fletcher had marked mental health limitations were inconsistent with reports in her medical records. Admin. R. 973. The treatment records indicate that Fletcher had fewer mood swings and panic attacks over time. Admin. R. 664-67, 687, 872, 972. During annual assessments, she did not mention significant difficulty focusing or remembering and her test responses suggested generally normal memory. Admin. R. 658, 901, 905. In August 2011 Ms. O'Brien reported Fletcher had "no serious PTSD issues" and her bipolar symptoms were "not problematic most of the time." Admin. R. 1520. During 2012 and 2013, her bipolar symptoms remained "not problematic most of the time." Admin. R. 1474, 1383, 1373. In June 2014 her

-14-    OPINION AND ORDER

mental health providers continued to note Fletcher "no longer had serious symptoms of PTSD." Admin. R. 973, 1302. The ALJ properly considered the effectiveness of treatment in determining the severity of Fletcher's symptoms. 20 C.F.R. § 404.1529(c)(3)(iv) and (v). Conditions that are effectively controlled by treatment are not disabling. *Warre v. Comm'r of Soc. Sec. Admin.,* 439 F.3d 1001, 1006 (9th Cir. 2006).

On this record, I am satisfied that the ALJ properly considered these opinions and gave weight to the portions that were consistent with the record as a whole. She provided sufficient reasoning based on inferences reasonably drawn from the evidence in the record for discounting portions of the opinions she found unpersuasive. Accordingly, I find no error in the ALJ's evaluation of the opinions.

## III.    Step Three Listing of Impairments

The Commissioner acknowledges that certain conditions are so severe as to preclude substantial gainful activity. If the medical evidence establishes that a claimant suffers from such a condition, there is a presumption of disability without further inquiry. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. § 404.1524(d)(1). The presumptively disabling conditions are enumerated in the regulations which specify the criteria a claimant must establish in order to show she meets a listed condition. The claimant carries the burden of proving she meets one of the conditions listed. *Lewis v. Apfel*, 236 F.3d at 514.

Fletcher contends her mental impairments are equivalent in severity to mental impairments in the Listing of Impairments. To show the degree of severity necessary to meet the criteria for a listed mental impairment, a claimant must establish marked impairment in two of the four broad categories of function identified in the regulations, *i.e.* activities of daily living, maintaining social

functioning, maintaining concentration, persistence or pace, and repeated episodes of decompensation of extended duration. 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00C.

Fletcher relies on Dr. Garrison's opinion that she had marked impairment in social functioning and in concentration, persistence or pace. Admin. R. 1567-1571. The ALJ correctly pointed out that Dr. Garrison's opinion was conclusory, did not specify the medical evidence upon which it was based, failed to identify the mental condition upon which it was based, relied on exhibits created from 2011 through 2014 but purported to relate back to 2006, and stated limitations that were inconsistent with Fletcher's activities and the record as a whole. Admin. R. 967-968, 975-976. As discussed above, the ALJ properly discounted Dr. Garrison's opinion. *Thomas v. Barnhart*, 278 F.3d at 957; *Meanal v. Apfel*, 172 F.3d at 1117.   Because Fletcher failed to produce credible evidence that she satisfied the criteria for a listed impairment, she is not entitled to a presumption of disability at Step Three of the disability determination process.

## VI.    RFC Assessment

Fletcher contends the ALJ's RFC assessment failed to accurately reflect all of her functional limitations. Again, however, Fletcher relies only on evidence that the ALJ found unreliable. An ALJ's RFC assessment need not include limitations the ALJ finds unsupported by the record. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001). Here, the ALJ's RFC assessment reasonably captures all the limitations supported by the evidence she found reliable. Accordingly, there is no error in the RFC assessment.

\\\

\\\

\\\

-16-    OPINION AND ORDER

## CONCLUSION

Fletcher's assignments of error cannot be sustained. Accordingly, the Commissioner's decision is **AFFIRMED** and this matter is dismissed.

Dated this ____ day of November 2016.

_____
Robert E. Jones, Senior Judge
United States District Court

-17-    OPINION AND ORDER